NICHOLAS GALOTTI, Appellant-Respondent, v. DEANSBORO SUPPLY COMPANY, INC., and WALTER R. BENNETT, Respondents-Appellants.

Third Department, June 25, 1936.

*Calli & Nemeti* [*R. R. Calli* of counsel], for the plaintiff-appellant-respondent.

*John J. Woods* [*William L. Burke* of counsel], for the defendants-respondents-appellants.

RHODES, J. The action is in negligence. The plaintiff, aged about fifty years, was employed with others by William J. Currie on his farm near Deansboro, to pick peas and beans. Mr. Currie provided shacks for the housing of his employees, furnishing them living quarters and also transportation between their place of employment and the shacks.

On September 9, 1933, one of his trucks broke down and he requested Mr. Nelson, who was the president of Deansboro Supply Company, Inc., to provide a truck to transport the employees that night. The truck was provided, and about forty or fifty employees, including plaintiff, were being carried therein from the place of work to their living quarters in the shack. The truck, proceeding southeasterly on the Deansboro-Waterville highway, approached the intersection of said highway with the Chenango Trail, which runs east and west, and stopped at a traffic signal at said intersection to wait for traffic. There is evidence to the effect that it was a frequent practice for the truck to stop at this place to permit employees to alight and do their shopping, although it is not claimed that plaintiff knew this custom, as this was his first day in this employment.

Plaintiff claims that while the truck was stopped he called to the driver, " I want to get off to buy some meat; " that as this remark was made the defendant Bennett, driver of the truck, put his head out of the window of the cab of the truck on the left side and looked toward the back end thereof; that as the truck remained motionless, plaintiff climbed from the inside of the truck

at the left side, using the slats of the body as a ladder, and that while he was on the outside of the truck body, hanging to the slats, facing the driver, and about one and one-half feet from him, he again called to the driver, "Wait, I'm getting off." That the driver still had his head out of the window looking directly at the plaintiff; that while in this position, without any warning, the truck, which was in low gear, suddenly started with a jolt which caused plaintiff to lose his hold on the rack of the truck and threw him to the ground. The left rear wheel ran over plaintiff's leg and ankle, causing a fracture of the femur near the hip and a shortening of the leg so that he walks with a limp; his ankle was also injured, so that plaintiff has sustained about a twenty per cent permanent loss of the use of his leg. Plaintiff also introduced evidence showing about $1,000 special damages through loss of wages. The jury returned a verdict of $4,000.

After the coming in of the verdict, the defendants made the usual motion to set it aside, and the court thereupon granted the order appealed from setting aside the verdict because of prejudicial questions asked during the trial by plaintiff's counsel.

It will be helpful to state certain facts appearing in the record as a background, in considering whether the questions were prejudicial and injurious.

Plaintiff's attorney was Mr. Calli, and defendants' counsel was Mr. Woods. During the selection of the jury defendants' counsel asked the jurors if they would treat the defendant corporation "as if it was an individual the same as if the action was against Fred L. Nelson, personally."

During the trial Nelson was recalled as a witness for defendant and the following occurred, which is the basis upon which the learned court below granted the order setting aside the verdict: "Q. When did you first know counsel, Mr. Woods? Mr. Woods: Objected to, as immaterial. The Court: Sustained. Mr. Calli [resuming]: Q. Did Mr. Woods ever come down to Deansboro? Mr. Woods: Objected to, on the same ground. The Court: Sustained. Mr. Woods: Ask the Court to admonish counsel not to be asking questions of that character. The Court: Well, I sustain the objection. Mr. Calli: That is all, Mr. Nelson. Or, just a minute, Mr. Nelson. You aren't worried very much about this case, are you, Mr. Nelson? Mr. Woods: Objected to, and move to withdraw a juror, as prejudicial. The Court: I will now admonish counsel. Mr. Woods: In view of the other questions asked by counsel, I press my motion. I think enough has been said in front of the jury. The Court: I will deny your motion and give you an exception."

It is argued for defendants that as Mr. Woods was an attorney from Syracuse, some distance away, the purpose of these questions was to intimate to the jury that an insurance company was interested in the litigation. The plaintiff says that this was not the purpose of the questions; that defendants' counsel was endeavoring to instill into the minds of the jury the idea that even though the corporation was defendant, the real party interested was Mr. Nelson, in the hope that through sympathy for him the jury might be influenced; that when plaintiff's counsel asked the question, "You aren't worried very much about this case, are you, Mr. Nelson?" it was for the purpose of counteracting the suggestion of defendants' counsel, and to emphasize that it was the corporation, not Mr. Nelson which was involved. He points further to the fact that he had interviewed Peter Klotzbach before the trial in the presence of Gertrude Klotzbach, the wife, and that Peter had stated that he knew nothing about the accident. He says that knowing that Gertrude was in the court room ready to testify, he wanted to lay the foundation for showing that her story had been concocted subsequent to his interview with her and that for this reason he asked the question of Nelson as to when he first knew Mr. Woods and whether Mr. Woods ever came down to Deansboro.

The learned court below felt that the sole purpose of asking these questions was to convey to the jury the idea that the defendant was insured, and that the effect possibly was harmful and prejudicial, inasmuch as there was a sharply controverted question of fact.

There is nothing in the language of the questions which suggests the subject of insurance and the questions seem proper for the purpose indicated by plaintiff's counsel.

Under the provisions of section 452 of the Civil Practice Act, it is proper to interrogate prospective jurors as to whether they are in any manner interested in any liability insurance company insuring against negligence. (*Blair* v. *McCormack Construction Co.,* 123 App. Div. 30.) Nevertheless, this question is propounded with monotonous regularity in nearly every negligence case, probably more for the purpose of suggesting that there is insurance than for the purpose of learning whether a juror is interested in any manner in any liability insurance company. Undoubtedly, if it clearly appeared that the sole purpose of plaintiff's counsel was to suggest that the defendants were insured and the questions indicated such fact and no other purpose, the questions would be objectionable. (*Rodzborski* v. *American Sugar Refining Co.,* 210 N. Y. 262; *O'Brien* v. *Hencken & Willenbrock Co.,* 172 App. Div. 142.)

The record indicates that the matter of insurance was not influential in motivating the jury to find a verdict for the plaintiff. After the case had been submitted to them the jury returned into court and at their request certain testimony of Mrs. Gertrude Klotzbach, both direct and cross, and a portion of plaintiff's testimony was read to them.

This supports the argument that the jury were giving serious consideration to the merits of the case; moreover, the verdict itself is not unreasonable in amount.

Our conclusion is that the questions objected to did not furnish sufficient ground for setting aside the verdict.

The defendants, by their appeal, assert that the verdict should have been set aside as contrary to the law and against the weight of evidence. The facts established by the plaintiff which the jury were warranted in accepting are adequate to support the verdict, and the refusal of the court to set it aside on this ground was proper.

The defendants further maintain that in any event plaintiff has elected to seek compensation and that there has been an " award " by the State Industrial Board, and thus the plaintiff is precluded from seeking other remedy. It appears that he did seek compensation against Mr. Currie, the employer, and that a determination was made by the Board denying compensation solely upon the ground that claimant (plaintiff here) was an employee and deliberately disobeyed orders which resulted in his injuries.

Section 29 of the Workmen's Compensation Law provides, in substance, that if an employee entitled to compensation be injured by the wrong of another not in the same employ, such injured employee shall, before any suit or any award, elect whether to take compensation or to pursue his remedy against such other and that " the awarding of compensation shall operate as an assignment of the cause of action   *   *   *   to the person   *   *   * or insurance carrier liable for the payment of such compensation."

Under this section as it stood at the time of plaintiff's injury herein, plaintiff had the right to maintain such action against a coemployee. (*Judson* v. *Fielding*, 227 App. Div. 430; affd., 253 N. Y. 596.)

No award has been made herein but a decision has been rendered denying an award, and the plaintiff's action is, therefore, maintainable.

The order setting aside the verdict should be reversed on the law and facts, and the verdict reinstated, and in so far as the order denies defendant's motion to set aside the verdict on the ground that it is contrary to the evidence and against the weight of evidence, should be affirmed, with costs to the plaintiff.

HILL, P. J., McNamee, Crapser and Bliss, JJ., concur.

Order setting aside verdict reversed on the law and facts, and verdict reinstated, and in so far as the order denies defendants' motion to set aside the verdict on the ground that it is contrary to the evidence and against the weight of the evidence it is affirmed, with costs to the plaintiff.